IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH MITCHELL, | ) | CASE NO. 4:13CV1969 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Keith Mitchell ("Plaintiff" or "Mitchell") challenges the final decision of Defendant, Carolyn M. Colvin, Acting Commissioner of Social Security ("Commissioner") denying his application for supplemental social security income ("SSI") and disability insurance benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act . Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the Commissioner's decision should be **AFFIRMED.**

### I. Procedural History

Mitchell filed applications for SSI and DIB on October 1, 2010, alleging a disability onset date of September 1, 2010. Tr. 179, 183. He alleged disability based on the following impairments: congestive heart failure, high blood pressure, diabetes, and neuropathy. Tr. 193. Mitchell's application was denied by the state agency initially (Tr. 118, 122) and on reconsideration (Tr. 127, 133). On May 18, 2012, a hearing was held before Administrative Law

1

Judge ("ALJ") James Hill. Tr. 32-77. In his June 1, 2012, decision, the ALJ determined that Mitchell's residual functional capacity ("RFC") did not prevent him from performing work existing in significant numbers in the national economy, i.e., he was not disabled. Tr. 12-29. Mitchell requested review of the ALJ's decision by the Appeals Council. Tr. 5-7. On July 17, 2013, the Appeals Council denied Mitchell's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Evidence

### A. Pertinent Medical History[1]

#### 1. Treatment Notes

**St. Elizabeth Health Center.** In April 2010, Mitchell presented to the emergency room of St. Elizabeth Health Center ("SEHC") for complaints of numbness and tingling in his feet and toes. Tr. 361. On July 12, 2010, Mitchell returned to the emergency room complaining of a one-month history of bilateral foot burning and pain. Tr. 351. He was diagnosed with peripheral neuropathy and prescribed Gabapentin and Elavil. Id. He was advised to follow up with the Family Health Center ("FHC"). Id. The following month, Mitchell returned to SEHC complaining of continued foot pain. Tr. 411. It was noted that Mitchell was supposed to be taking his medication and had not followed up with the FHC. Id. It was also noted that Mitchell had some swelling on the IP joint of one of his toes but had no difficulty walking. Id. He was prescribed Colchicine and pain medications. Id.

---

[1] Plaintiff only challenges the ALJ's findings with respect to Mitchell's use of a cane to ambulate and the ALJ's failure to address the May 2012 opinion of Dr. Williams. Accordingly, only medical evidence relating to Mitchell's lower extremities and Dr. Williams' opinion will be summarized herein. It should be noted; however, that Mitchell has a history of diabetes and his diabetic neuropathy is related to that condition. Tr. 456.

2

**Dr. Williams.**  On March 30, 2011, Mitchell was seen as a new patient by Kwame Williams, D.P.M. ("Dr. Williams"), for a diabetic foot evaluation and complaints of numbness, burning, and tingling in his feet.  Tr. 427.  Dr. Williams noted that Mitchell showed full muscular strength in his feet and full range of motion in his pedal and ankle joints.  Id.  Dr. Williams ordered diagnostic tests and measured Mitchell for diabetic shoes.  Id.  He also cut Mitchell's toe nails to reduce pain and inflammation.  Id.   On April 5, 2011, during a follow up with Dr. Williams, Mitchell reported a negative reaction to Tramadol[2] and was prescribed Tylenol with codeine.  Tr. 426.   Mitchell returned to Dr. Williams on April 20, 2011, and was advised to continue Tylenol and Gabapentin.  Tr. 425.  Dr. Williams also dispensed to Mitchell a pair of compression stockings to "decrease/prevent edema" and referred him to a pain management clinic.  Id.

On June 16, 2011, Mitchell continued to report some pain in his feet and was advised to take Benadryl in the evenings for the pain.  Tr. 447.   In July 2011, Mitchell reported continued pain.  Tr. 446.  He indicated that he visited the pain management clinic and the clinic representatives were considering switching him to Lyrica.  Id.  Mitchell was prescribed Metanx and Tramadol for pain.  Id.  In August 2011, Mitchell received his diabetic shoes and custom inserts.  Tr. 445.  Dr. Williams noted that an electromyography and nerve conduction velocity were positive for demyelinization,[3] axonal loss,[4] and moderate peripheral neuropathy.  Id.  Dr. Williams refilled Mitchell's prescriptions and advised him to "remain active, wear his compression stockings and elevate his legs when not in use."  Id.   In November 2011, Mitchell

---

[2] Dr. Williams' earlier treatment note did not discuss a prescription for Tramadol.

[3] Demyelinization: "destruction, removal, or loss of the myelin sheath of a nerve or nerves."  See Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at p. 486.

[4] Axon: "the process of a neuron by which impulses travel away from the cell body…"  See Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at p. 186.

3

returned and requested new compression socks, stating that they were working well but lost their effectiveness and were no longer tight.  Tr. 493.  In December 2011, Mitchell stated that his diabetic neuropathy was well maintained with his treatment.  Tr. 492.  It was noted that Mitchell's pain was "out of proportion on physical exam."  Id.  In February 2012, it was reported that no edema was present and Mitchell denied "worsening of his condition."  Tr. 491.  In April 2012, Mitchell again returned to Dr. Williams and was noted to have numbness, burning, tingling, and paresthesia in his bilateral lower extremities.  Tr. 489.

**Pain Associates.**  On June 13, 2011, Mitchell was evaluated at Pain Associates of Northeastern Ohio.  Tr. 439-40.  It was noted that Mitchell had been diagnosed with diabetic neuropathy and polyneuropathy which affected mainly his toes.  Id.  It was also noted that Mitchell "ambulates with a short cane secondary to the pain to his bilateral feet."  Id. Mitchell was prescribed Neurontin.  Id.  In August 2011, it was noted that Mitchell had a wide based gait and a mild limp.  Tr. 437.  Mitchell reported that he had some benefit from the Neurontin and was able to walk to the park.  Id.  In November 2011, Mitchell reported continued severe pain ("10/10") and stated that damp weather increased the pain.  Tr. 474.  Mitchell was prescribed Tramadol.  Id.  In December 2011, it was noted that the Tramadol was not helping.  Tr. 473.  Mitchell was prescribed Cymbalta and Vicodin.  Id.  It was also noted that Mitchell had a wide-based gait and moved slowly and cautiously.  Id.

On January 11, 2012, Mitchell reported continued sharp pain in his toes and occasionally in his fingertips.  Tr. 472.  It was noted that Mitchell's diabetes was not well-controlled at this time.  Id.  Mitchell returned to Pain Associates in February 2012 and was noted to have a slow wide-based gait while wearing his diabetic shoes.  Tr. 471.  He reported limited activities secondary to pain and stated he could not drive due to "no feeling [in] feet."  Id.   In March

4

2012, Mitchell reported constant pain ("10/10") and stated that, because of his neuropathy, he was unable to walk half a city block and could stand for only a "poor duration."  Tr. 470.  It was noted that his blood sugar was up and down.  Id.

### B. Medical Opinion Evidence

#### 1. Plaintiff's Treating Source

**Dr. Williams.**  On May 29, 2012, Dr. Williams completed a peripheral neuropathy residual functional capacity on Mitchell's behalf.[5]  Tr. 497-500.  Dr. Williams indicated that he had been treating Mitchell on a monthly or weekly basis since March 30, 2011.  Tr. 497.  Dr. Williams diagnosed Mitchell with diabetic neuropathy and opined that he could stand/walk for less than 2 hours and sit for less than 2 hours in an 8-hour work day.  Tr. 497-98.  Dr. Williams further opined that Mitchell needed to take unscheduled breaks every 30-60 minutes and needed to elevate his legs every 30 minutes.  Tr. 497-98.  Dr. Williams noted that Mitchell must use a cane or other assistive device for occasional walking/standing.  Tr. 499.  He opined that Mitchell could never twist, stoop/bend, or crouch/squat.  Id.  Dr. Williams supported his conclusions by stating that Mitchell "has chronic pain and edema and limited ambulation."  Tr. 500.

#### 2. State Agency Opinions

**Dr. Holbrook.**  On January 31, 2011, Walter Holbrook, M.D., completed a residual functional capacity assessment of Mitchell.  Tr. 81-86.  Dr. Holbrook opined that Mitchell could stand for only 30 minutes at a time for a total of 4 hours.  Tr. 83.  He further opined that Mitchell could never climb ladders, ropes, or scaffolds and could frequently climb ramps and stairs.  Id.  According to Dr. Holbrook, Mitchell should limit exposure to humidity, wetness, extreme heat

---

[5] As discussed below, the ALJ hearing in this case was on May 12, 2012.  Dr. Williams' opinion was not submitted to the ALJ until May 31, 2012, 13 days after the hearing and one day before the ALJ issued his decision.

and cold and he should avoid commercial driving, work at unprotected heights, and should not operate hazardous equipment.  Tr. 84.

**Dr. McCloud.**  On March 28, 2011, state agency physician W. Jerry McCloud, M.D., reviewed the record and affirmed Dr. Holbrook's assessment.  Tr. 101-06.

### C.  Testimonial Evidence

#### 1.  Mitchell's Testimony

At the administrative hearing, Mitchell was represented by counsel and testified that he was 39 years old at the time of the hearing and finished school through the tenth grade.  Tr. 40-41.  Mitchell testified that his past work was in retail, landscaping, and the restaurant industry.  Tr. 43-45.  Mitchell testified that he is unable to work due to his gout, back pain, neuropathy, and congestive heart failure.  Tr. 47-50.  Mitchell testified that he was fired from his job with TJ Maxx in 2010 because he was taking extra breaks due to pain in his feet.  Tr. 55-57.

Mitchell was using a cane at the hearing, as acknowledged by the ALJ, but stated that it was not prescribed by a doctor.  Tr. 46.  Rather, Mitchell testified, "my foot doctor told me it would take some of the – you know, there wouldn't be so much pressure on my foot.  So he told me, if I can afford a cane to try to get one, if I'm going to be walking, for you know, long periods of time, over an hour or so, or anything like that."  Id.  Mitchell testified that he thought he could walk for 25-30 minutes without a cane and maybe an hour with the cane.  Tr. 52.  He stated that he had difficulty bending, reaching, and sitting.  Tr. 52-53.

#### 2.  Vocational Expert's Testimony

Vocational Expert Barbara Burk ("VE") testified at the hearing.  Tr. 65-76.  The VE testified regarding the skill and exertional levels of Mitchell's past work:  warehouse worker (unskilled, medium but performed at heavy to very heavy); building material sales attendant

(marginally semi-skilled and heavy); cashier-wrapper (light but may have performed heavy);[6] sales attendant (unskilled, light). Tr. 69. The VE testified that Mitchell did not have transferable job skills. Tr. 73.

The ALJ then asked the VE to consider a hypothetical individual of Mitchell's age, education, and work experience who can perform sedentary work but can never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could not stand/walk for more than 30 minutes at a time; could occasionally operate foot controls; must avoid even moderate exposure to extreme heat, extreme cold, wetness, and humidity; must avoid all exposure to hazards, such as dangerous machinery and unprotected heights. Tr. 71. The VE testified that such a hypothetical individual could not perform Mitchell's past work. Tr. 71-72. The ALJ then asked the VE whether there were other jobs existing in the regional and national economies that such an individual could perform. Tr. 72. The VE testified that such an individual could perform the following jobs: cashier II (500-800 regional jobs, 50,000-70,000 national jobs) and small products assembler (500 regional jobs, 29,000 national jobs). Tr. 72-74.

The ALJ then asked the VE to consider a second hypothetical individual with the following modifications from the first: the second individual could occasionally stoop, kneel, crouch, and crawl; must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; can rarely climb ramps and stairs; and is unable to operate foot controls. Tr. 74-75. The VE testified that the second hypothetical individual would be unable to perform work as a cashier and small products assembler. Tr. 75. The ALJ then posited a third hypothetical with the following additions to the second: the individual must be permitted to take three to four unscheduled work breaks, of 15 to 20 minutes each, during the course of an eight-hour work day. Tr. 76. The VE responded that there would be no jobs for such an individual. Id.

---

[6] The VE did not testify to the skill level of the cashier-wrapper job.

Next, Mitchell's attorney questioned the VE. Tr. 76-77. Mitchell's attorney asked the VE to opine on the following: if the VE were to adopt the ALJ's first hypothetical but add that the individual would need to elevate their feet occasionally throughout the work day, at waist height. Tr. 76. The VE testified that there would be no jobs for such an individual without a special accommodation. Id. Mitchell's attorney then asked, alternatively, whether, if the first hypothetical individual described by the ALJ were to have an additional limitation that he could only occasionally perform fine manipulation, the individual be able to perform the two jobs previously identified by the VE. Id. The VE testified that there would be no jobs for such an individual. Id.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making an initial determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also* *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

### IV. The ALJ's Decision

In his June 1, 2012, decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.  Tr. 17.

2. The claimant has not engaged in substantial gainful activity since September 1, 2010, the alleged onset date.  Tr. 17.

3. The claimant has the following severe impairments: diabetes, diabetic peripheral neuropathy, cardiomyopathy, congestive heart failure, and obesity.  Tr. 17.

9

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 19.

5.  The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can never climb ladders, ropes, or scaffolds and he can rarely climb ramps and stairs.  He cannot stand/walk for more than 30 minutes at a time.  The claimant can occasionally stoop, kneel, crouch, and crawl.  He can occasionally operate foot controls.  The claimant must avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation.  The claimant must avoid all exposure to hazards such as dangerous machinery and unprotected heights.  Tr. 19.

6.  The claimant is unable to perform past relevant work.  Tr. 23.

7.  The claimant was born in 1972, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  Tr. 23.

8.  The claimant has a limited education and is able to communicate in English.  Tr. 23.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  Tr. 23.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  Tr. 23.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2010, through the date of the decision.  Tr. 24.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council declined review on July 17, 2013.  Tr. 1-4.

### V. Parties' Arguments

Plaintiff argues that remand is required because the ALJ failed to mention and consider the opinion of Dr. Williams, one of Mitchell's treating sources. Doc. 15, pp. 16-17. Plaintiff also argues that the ALJ's RFC finding is not supported by substantial evidence because it failed to account for Mitchell's need to use a cane. Id. at pp. 17-19. Defendant counters that the ALJ's decision is supported by substantial evidence. Doc. 18, pp. 6-11.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

    **A. The ALJ did not violate the treating physician rule because the opinion of Dr. Williams was submitted after the hearing and the submission did not comply with the social security regulations**

Mitchell contends that the ALJ erred by failing to consider the opinion of Dr. Kwame A. Williams. Doc. 16, pp. 16-17. Mitchell submitted the opinion of Dr. Williams to the ALJ on May 31, 2012, thirteen days after the hearing and one day prior to the issuance of the ALJ's

11

decision. Tr. 496-500. It is clear that the ALJ did not consider the opinion of Dr. Williams when rendering his decision. Tr. 29.

Mitchell contends that Dr. Williams' opinion should have been considered by the ALJ because the official record does not close until the ALJ has issued his decision. Doc. 19, pp. 1-2 (citing 20 C.F.R. §§ 405.360, 405.430). While Mitchell is correct that the official record closes once the ALJ has issued the decision, the date the record closes does not establish the deadline for submitting evidence. Social Security regulation 20 C.F.R. § 405.331 requires that evidence be submitted to the agency five days before a hearing, but carves out a limited exception for evidence filed after the deadline as follows:

> (a) You should submit with your request for hearing any evidence that you have available to you. Any written evidence that you wish to be considered at the hearing must be submitted no later than five business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider the evidence unless the circumstances described in paragraphs (b)[7] or (c) of this section apply....
>
> (c) If you miss the deadline described in paragraph (a) of this section and you wish to submit evidence after the hearing and before the hearing decision is issued, the administrative law judge will accept the evidence if you show that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of the record, would affect the outcome of your claim, and:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.331(a) and (c) (" § 405.331").[8] Mitchell has failed to show that he met the pre-hearing deadline or that he meets the exception for submitting evidence after the deadline.

---

[7] Paragraph (b) applies to evidence submitted prior to the hearing. 20 C.F.R. § 405.331(b).

[8] Neither Mitchell nor the Commissioner cites to §405.331 or case law relying upon that section.

12

In submitting Dr. Williams' residual functional capacity to the ALJ, Mitchell's attorney submitted a cover letter which stated, "Please file the enclosed on behalf of our client." Tr. 496. The cover letter does not acknowledge that the evidence was being submitted after the deadline and does not indicate that there is a reasonable possibility that the evidence would affect the outcome of the claim. Even if there were a reasonable possibility that the opinion of Dr. Williams would have affected the outcome, Mitchell still fails to show that the administration's action misled him; that he had a physical, mental, educational, or linguistic limitation(s) that prevented him from submitting the evidence earlier; or some other unusual, unexpected, or unavoidable circumstance beyond his control prevented him from submitting the evidence earlier. 20 C.F.R. § 405.331(c).

Thus, because Mitchell fails to show that he met the requirements of § 405.331 in submitting Dr. Williams' assessment after the hearing had concluded, the ALJ was not required to consider that assessment in his opinion.[9] *Passafiume v. Comm'r of Soc. Sec.*, 1:12-CV-0795, 2012 WL 5611501 at *9 (N.D. Ohio Nov. 15, 2012) (finding that ALJ did not err by failing to consider a treating physician opinion submitted after the hearing because plaintiff did not establish §405.331 requirements); *Scates v. Comm'r of Soc. Sec.*, 1:12-CV-408, 2014 WL 1092081 (E.D. Tenn. Mar. 17, 2014) (finding that the ALJ did not err by failing to consider physician's opinion submitted after hearing where plaintiff failed to show that he fell within an exception to §405.331); *Young v. Colvin*, 3:12-CV-245, 2013 WL 4591554 (E.D. Tenn. Aug. 28, 2013) (finding that ALJ was not required to consider physician opinion submitted after hearing because plaintiff failed to establish the requirements of §405.331). Mitchell's argument to the contrary is not well taken.

---

[9] Plaintiff bases his argument for remand on sentence four of 42 U.S.C. 405(g). Doc. 19, p. 1. Plaintiff specifically states that he is not requesting a motion for remand under sentence six of 42 U.S.C. 405(g). Id. Accordingly, the Court has not reviewed Plaintiff's arguments under sentence six.

13

**B. The ALJ did not err by omitting the use of a cane in the hypothetical to the VE.**

Mitchell argues that the ALJ posed an inaccurate hypothetical to the VE because it omitted any mention of his need for a cane and, therefore, the ALJ's decision is not supported by substantial evidence. Doc. 15, pp. 17-19. In the Sixth Circuit, a VE's testimony must be based on a hypothetical question that accurately portrays the claimant's physical and mental impairments. *See Parley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987). The VE's opinion testimony may only be used as substantial evidence of a claimant's residual functional capacity when that testimony is in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments." *Davis v. Sec'y of Health & Human Servs.,* 915 F.2d 186, 189 (6th Cir.1990). However, it is also "well established that an ALJ ... is required to incorporate only those limitations accepted as credible by the finder of fact" into the hypothetical question. *Casey v. Sec'y of Health & Human Servs. .,* 987 F.2d 1230, 1235 (6th Cir.1993).

The Commissioner contends that Mitchell's use of the cane was not medically required because medical documentation did not establish the need for a hand-held assistive device. Doc. 18, p. 9. Mitchell and the Commissioner agree that the operative law on this point is governed by Social Security Rule 96-9p, which states a follows:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an

> individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. [footnote 7] For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96–9p, 1996 WL 374185 at *7 (July 2, 1996).

Mitchell points to various pieces of evidence to support his need for a cane. Doc. 15, p. 18 (citing to Tr. 46, 50, 290, 297, 419, 422, 439, 470, 498). First, Mitchell points to his own testimony (Tr. 46, 50). However, Mitchell's testimony does not qualify as "medical documentation establishing the need" for the cane under SSR 96-9p. *Smith v. Astrue*, CIV.A. 2:11-0065, 2012 WL 4329007 (M.D. Tenn. July 16, 2012) *report and recommendation adopted,* 2:11-CV-00065, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) (finding that plaintiff's testimony regarding her need for a cane did not count as "medical documentation establishing the need [for the cane], and a description of circumstances of when it is needed.") Further, Mitchell's testimony makes clear that no doctor prescribed him a cane.[10] Tr. 46.

In addition to his own testimony, Mitchell also points to various treatment notes to establish his need for a cane. Tr. 290, 297, 419, 422, 470. However, a review of those treatment

---

[10] When asked by the ALJ if his cane was prescribed by a doctor, Mitchell testified "No." Tr. 46. He further stated, "my foot doctor told me [the cane] would take some of the – you know, there wouldn't be so much pressure on my foot. So he told me, if I can afford a cane to try to get one, if I'm going to be walking, for you know, long periods of time, over an hour or so, or anything like that." Id. Accordingly, even if the Court were to accept Mitchell's testimony regarding what his doctor told him as "medical documentation," that testimony establishes that a cane was not required unless he was walking for "over an hour or so" and the RFC appropriately limited Mitchell to sedentary work where he could not stand/walk for more than 30 minutes at a time.

15

notes reveals that the notes do not discuss, let alone establish, the need for a cane or describe circumstances when it is needed.

Next, Mitchell points to a 2011 letter from Pain Associates of Northeast Ohio which states that "patient ambulates with a short cane secondary to the pain to his bilateral feet." Tr. 43. This section of the 2011 letter appears to be a recapitulation of Mitchell's complaints and background information. Id. As such, the letter does not establish Mitchell's need for the cane or describe circumstances when it is needed.

Finally, Mitchell points to the May 29, 2012, opinion of Dr. Williams. Tr. 498. In his opinion, Dr. Williams stated that Mitchell must use a cane or other assistive device while engaging in occasional standing/walking. Tr. 499. However, as established in the prior section, Dr. Williams' opinion was not timely submitted to the ALJ and the ALJ did not consider it, and was not required to do so when rendering his decision. Accordingly, Dr. Williams' opinion cannot serve as medical documentation establishing the need for the cane.

As there is no medical documentation establishing that Mitchell required the use of a cane and describing the circumstances when it is needed, the ALJ did not err by omitting the use of a cane from his hypothetical questions to the vocational expert.[11] *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002) ("Because the cane was not a necessary device for claimant's use, it cannot be considered an exertional limitation that reduced her ability to work."); *See Strain v. Comm'r of Soc. Sec. Admin.*, 5:12-CV-1368, 2013 WL 3947160 (N.D. Ohio Aug. 1, 2013)

---

[11] Plaintiff cites *Steigerwald v. Comm'r of Soc. Sec.*, for the proposition that remand is required where the ALJ fails to obtain testimony from the VE that would clarify the extent of jobs available had Mitchell's need for a cane been considered. *Id.,* 1:12 CV 02739, 2013 WL 5330837 at *6 (N.D. Ohio Sept. 23, 2013); Doc. 15, p. 19. However, *Steigerwald* is distinguishable. In *Steigerwald*, the Court rejected the Commissioner's argument that plaintiff's cane was not medically required because the ALJ discredited an opinion of a state agency consultant on the basis that it failed to account for the use of cane for balance in ambulation. 2013 WL 5330837 at *6. Thus, the Court reasoned that the ALJ's decision supported the fact that the cane was medically required. *Id.* Here, the ALJ found Mitchell's allegations of symptoms, including the use of the cane, not credible and did not otherwise indicate in his decision that the cane was medically required.

(uphold the ALJ's RFC determination excluding use of a cane where no objective medical evidence supported use of the cane); *Murphy v. Astrue*, 2:11-CV-00114, 2013 WL 829316 at *7 (M.D. Tenn. Mar. 6, 2013) *report and recommendation adopted sub nom. Murphy v. Colvin*, 2:11-CV-00114, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013)(finding that ALJ did not err in omitting use of cane in the VE hypothetical where cane was not prescribed by a physician and use of cane was not supported by the objective medical evidence); *Austin v. Comm'r of Soc. Sec.*, 3:09CV723, 2010 WL 1170625 at *11 (N.D. Ohio Jan. 29, 2010) *report and recommendation adopted,* 3:09 CV 723, 2010 WL 1170630 (N.D. Ohio Mar. 23, 2010) (where documented evidence did not reflect that plaintiff need cane to stand or ambulate, ALJ was not required to include cane usage in RFC); *compare Simmons v. Comm'r of Soc. Sec.*, 1:12CV2591, 2013 WL 3873952 at *11 (N.D. Ohio July 25, 2013) (where the medical record included a prescription for the cane from the treating physician, the ALJ was obligated to determine whether the cane was medically necessary). Furthermore, because the hypothetical upon which the VE relied in providing her opinion adequately accounted for and incorporated the RFC limitations that the ALJ found to be credible and supported by the record, the ALJ's reliance upon the VE testimony in response to that hypothetical was proper and constitutes substantial evidence to support his Step Five determination. *See Parks v. Social Sec. Admin.*, 413 Fed. App'x. 856, 865 (6th Cir. 2011)(citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)) ("[h]ypothetical questions . . . need only incorporate those limitations which the ALJ has accepted as credible.").

17

## VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED.**

Dated: July 14, 2014

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).